**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ANNIE COLLINS on behalf of herself**                 **CIVIL ACTION**
    **and All Others Similarly Situated**

**VERSUS**                                             **NO. 06-2946 c/w 06-3835**

**SANDERSON FARMS, INC.**                              **SECTION: "C"(4)**
**(PRODUCTION DIVISION), ET AL**

**MEMORANDUM OPINION**

By separate order, the Court has granted the motion of plaintiffs in this Fair Labor

Standards Act ("FLSA") collective action, Annie Collins on behalf of herself and All Others

Similarly Situated ("plaintiffs") and defendants, Sanderson Farms, Inc. (Production Division)

and Sanderson Farms, Inc. (Processing Division) (collectively, "Sanderson Farms") for final

approval of a settlement of this lawsuit.  Rec. Doc. 278.  A hearing was held on this motion on

June 19, 2008.  The Court issues this opinion to explain its order approving the settlement under

the applicable law.

**I. Background**

The Settlement Class and Allegations

The plaintiffs brought suit on behalf of herself and other past and present employees at

the poultry processing plants of Sanderson Farms, Inc., in Mississippi, Louisiana, Texas, and

Georgia, claiming that they should be compensated for time spent donning and doffing

1

protective gear and equipment, cleaning and sanitizing, and walking to and from work stations.

The named plaintiff, an hourly, non-exempt employee, alleged violations of her statutory

employment right to receive pay for all compensable time and overtime worked for the

defendants, under the FLSA, 29 U.S.C. § 201, *et seq.*, and sought to represent all other similarly

situated past and present employees and to have the action certified as a collective action

pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  The parties agreed to authorize a

collection action under this section, and reached the proposed settlement affecting the processing

and foods employees that don and doff protective and sanitary equipment.[1]

The Terms of the Settlement Agreement

The Settlement Agreement setting out in greater detail the terms of the proposed

settlement is entered in the record at Rec. Doc. 271 (Amended Second Stipulation of Settlement

Agreement).  The agreement provides a settlement fund of $3,120,000 to play claims of the

class, which totals approximately 8300 employees, litigation and settlement costs, and attorney's

fees.  The claims fund from which the plaintiffs' claims will be paid totals $2,450,000.

Attorney's fees total $770,000,[2] which is 25% of the original settlement amount of $3,000,000.

---

[1] The plaintiff class is defined as follows:

> All current or former production employees, defined as hourly nonexempt
> processing employees in evisceration, second processing, including ice, pack,
> specialty, cut up, over wrap, debone, poly bag, paw line, and picking along with
> foods division employees in the line operator, cook line operator and entree line
> operator positions, who filed opt-in notices in the Action and who worked for
> Sanderson Farms at any time in the three years preceding the date the employee
> opted into this Action, including all of the Named Plaintiffs.

[2] This amount includes $20,000 in expense reimbursement.

The defendants did not object to fees for plaintiffs' counsel in this amount, and the parties requested joint approval of the fees.

Eligible class members who have opted into the lawsuit will be paid from the claims fund according to an agreed-upon formula, which provides for the payment of $.0913 per hour for each hour worked between June 4, 2004 and August 1, 2007. Based on an average wage rate for Sanderson Farms employees of $9.13 an hour, this computes to 4.8 minutes of pay per day for donning and doffing and walking to and from work stations. *See* Rec. Doc. 278 at 6-7, 7 n.3. This rate reflects the calculation of Sanderson Farms' expert of a maximum of 8 minutes per day spent donning and doffing and traveling to and from work stations prior to June 1, 2006, when new smock stations were in place at all facilities[3] and a maximum of 4 minutes per day thereafter until August 1, 2007. This compensation is net of any fees and expenses, which are to be paid to plaintiffs' counsel separately under the settlement agreement.

In addition, Sanderson Farms has changed its time keeping practices by compensating its employees for time spent traveling to and from their work stations, and donning and doffing before and after their shifts, and by providing meal breaks that are free of donning and doffing activities.

## II. Approval of the Settlement

### A. Applicable Law

This Court must approve any settlement reached by the parties which resolves the claims

---

[3] The new smock stations apparently cut down considerably on the donning and doffing and traveling to and from work stations time. *See* Rec. Doc. 278 at 8.

in this action brought under Section 16(b) of the FLSA.  The Court's role in this situation is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to FED.R.CIV.P. 23, and derives from the special character of the substantive labor rights involved.  Accordingly, it is appropriate to briefly discuss the rights at issue.

i.    <u>Substantive Labor Rights</u>

The FLSA was enacted for the purpose of protecting all covered workers from substandard wages and oppressive working hours.  *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a).  It was designed to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Id.* at 739 (internal citations and quotations omitted).  Congress recognized that "due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945).  The provisions of the statute are mandatory, and not subject to negotiation and bargaining between employers and employees.  *Id.* at 707; *Lynn's Food Stores, Inc.*, 679 F.2d 1350 (11th Cir. 1982).  Under Section 16(b), an employer who violates Section 206 or 207 is liable to the employee or employees affected in the amount of their unpaid minimum or overtime compensation, and for an additional equal amount as liquidated damages.  29 U.S.C. § 216(b).

The Supreme Court issued two opinions in the 1940s that defined the scope of private settlement and waiver of claims under Section 16(b).  In *O'Neil*, the Court refused to give effect to a waiver signed by employees of their right to liquidated damages under the FLSA.  The Court noted that at issue were private rights that affected the public interest, and that in such circumstances such rights cannot be waived or released if such release would thwart the legislative policy the grant of the private right was designed to effectuate.  324 U.S. at 707.  "No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act."  *Id.*  It went on to conclude that the same policy considerations forbidding waiver of basic minimum and overtime wages also prohibits waiver of employees rights to liquidated damages.  *Id.*  The liquidated damages provision is not penal in nature, but rather constitutes compensation for all the damages employees (earning statutory subsistence wages) are likely to sustain when they are not paid on time.  *Id.* at 707-08.  That is, "double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being."  *Id.* at 707.

The next year, the Court in *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108 (1946), held that FLSA barred a private settlement agreement, in which employees agreed to release an employer from liquidated damages claims in return for full payment of wages arguably due and unpaid, even where there was a bona fide dispute as to whether the employees were covered by the Act.  "We think the purpose of the Act, which we repeat from the *O'Neil* case was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of

controversies over coverage." *Id.* at 116.  The Court recognized, in essence, that the same unequal bargaining power between employers and employees that underlies the Act and its rule that private parties may not negotiate subminimum wages, would potentially be present in any private settlement of claims for such wages.  *See also Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Hohnke v. U.S.*, 69 Fed.Cl. 170, 175 (Fed.Cl. 2005).

ii.     Standard for Approval of Settlement of FLSA collective action

In a well-reasoned and oft-cited decision, the Eleventh Circuit concluded that there are two ways in which back wage claims arising under the FLSA can be settled or compromised by employees and employers.  *Lynn's Food Stores*, 679 F.2d 1350.  In addition to the waiver by employees of the right to bring suit for both unpaid wages and liquidated damages when the Secretary of Labor supervises a settlement pursuant to 29 U.S.C. § 216(c), the court recognized that "[w]hen employees bring a private action for back wages under the FLSA [under § 216(b)], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  *Id.* at 1353 (citing *Gangi*, 328 U.S. 108, and *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947)).

In order to approve a settlement proposed by an employer and employees of a suit brought under the FLSA and enter a stipulated judgment, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355;  *Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D.La 9/23/04) (Wilkinson, J.).

The primary focus of the Court's inquiry in determining whether to approve the settlement of a FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, *see Woods v. New York Life Ins Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982); *Kinney Shoe Corp. v. Vorhes*,  564 F.2d 859, 863-64 (9th Cir. 1979),[4] but rather on ensuring that an employer does not take advantage of its employees in settling their claim for wages.  *See Lynn's Food Stores*, 679 F.2d 1354; *Hitchcock v. Orange County, Fla.*, 2006 WL 3614925, *4 (M.D.Fla. 12/11/2006).   Indeed, a court must approve any settlement of claims brought under § 216(b) even if there is only one plaintiff, where analogy to Rule 23 would have limited usefulness.  *See, e.g., Stalnaker v. Novar Corp.*, 293 F.Supp.2d 1260 (M.D.Ala. 2003); *Walker v. Home at Last of Brevard, Inc.*, 2007 WL 2698535 (M.D.Fla. 9/12/07); *Russell v. Circle L Roofing, Inc.*, 2007 WL 1549307 (M.D.Fla. 5/28/07).  Thus the Court's role is driven at least as much by the substantive labor rights underlying the claims as it is by the collective nature of the lawsuit.

a.    Bona Fide Dispute

In their joint memorandum in support of the motion for final approval, the parties assert that "as no doubt exists that this lawsuit involves a bona fide dispute over FLSA's overtime provisions, the only consideration is whether the settlement is fair and reasonable."  Rec. Doc. 278 at 11.  In light of the nature of the substantive rights and labor policy involved, as discussed in *O'Neil* and *Gangi*, and the special requirement of its final approval, the Court understands the

---

[4] The Ninth Circuit's holding that the trial court could not permit circulation of court-approved notice of a collective action to other employees was reversed by *Hoffman-LaRoche v. Sperling*, discussed below.

necessary inquiry into whether there is indeed a "bona fide dispute" to be more robust than the parties' assertion would suggest.

In essence, the Court must ensure that the parties are not, via settlement of the plaintiffs' claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime. 29 U.S.C. §§ 206, 207. If no question exists that the plaintiffs are entitled under the statute to the compensation they seek (and therefore to liquidated damages, as well), then any settlement of such claims would allow the employer to negotiate around the statute's mandatory requirements. Without a bona fide dispute, no settlement could be fair and reasonable. Thus some doubt must exist that the plaintiffs would succeed on the merits through litigation of their claims.

The parties suggest that the mere existence of an adversarial lawsuit is enough to satisfy the requirement that a "bona fide dispute" exists, and other courts appear to have treated "bona fide dispute" and "lawsuit" as essentially synonymous. *See, e.g., Hitchcock*, 2006 WL 3614925 at *5; *Ferfort v. Denny's, Inc.*, 2008 WL 1881794, *2 (4/24/2008); *Hamilton v. Frito-Lay, Inc.*, 2007 WL 219981, *4 (M.D.Fla. 1/26/2007). However, as a logical matter, the requirement that a bona fide dispute exist could not be satisfied by the mere existence of a lawsuit, without regard for the relative equities: A lawsuit will automatically exist any time a court is reviewing a settlement, because at that stage a complaint will necessarily have been filed. The requirement, then, that a judge determine that a bona fide dispute exists would be a nullity if the parties could just point to the fact that they are present before the court in the context of an adversarial

lawsuit.[5]  The presence of attorneys representing FLSA collective action plaintiffs, and the filing

of a lawsuit, makes the likelihood of the sort of pressured "settlement" at issue in *Lynn's Food*

*Stores* much lower than it would be otherwise.  But for the inquiry to have any meaning for a

court reviewing a settlement, it must do more than just take at face value the parties' assertion

that there is "no doubt" that the lawsuit involves a bona fide dispute over FLSA coverage.[6]

That being said, while the Court must give comprehensive consideration to all relevant

factors, the settlement hearing must not be turned into a trial or a rehearsal of the trial.  *Brask*,

2006 WL 2524212 at *2.  In general, settlement is the preferred means of resolving litigation.

*Williams v. Nat'l Bank*, 216 U.S. 582, 595 (1910); *Mid-South Towing Co. v. Har-Win, Inc*., 733

F.2d 386, 391-92 (5th Cir. 1984).  Furthermore, on this and the factors utilized below in order to

determine whether the settlement is fair and reasonable, the Court must keep in mind the "strong

presumption" in favor of finding a settlement fair, *Camp*., 2004 WL 2149079 at *5 (citing

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)), and remain aware, as the parties must

also be, that a settlement is a compromise, a yielding of the highest hopes in exchange for

---

[5] *Lynn's Food Stores* states that "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." 679 F.2d at 1354.  The court clearly contemplated the possibility of inappropriate settlement of issues that are not "actually in dispute."

[6] The district court in Minnesota characterized the inquiry into the merits of the suit as follows: "The primary consideration in determining whether a settlement is fair and reasonable is the strength and nature of the claim in light of the possible defenses."  *Brask v. Heartland Automotive Services, Inc.*, 2006 WL 2524212, *2 (D.Minn. 2006).  This Court characterizes the inquiry as an issue of whether a bona fide dispute over FLSA coverage exists.  The Court agrees with the sentiment reflected by *Brask* that once a bona fide dispute is found to exist, a continuum will be created in which the less persuasive the employees' arguments for coverage under FLSA, the lower the proportion of the potentially uncompensated wages (plus liquidated damages) that would be necessary to make a settlement "fair and reasonable."

certainty and resolution.  *Id.*, citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995).[7]

b.    Fair and Reasonable

Despite significant discussion and confusion by courts about the relationship between Rule 23 and FLSA collective actions brought under § 216(b), simply put, "Rule 23 is inapplicable to proceedings under the FLSA."   5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.04[1] (citing cases).  In order to participate in a collective action brought under 29 U.S.C. § 216(b), a potential plaintiff must affirmatively file "his consent in writing" in the court in which the action is brought in order to become a party.  If a potential plaintiff (that is, one who is "similarly situated" to the original plaintiff - here, all those who fit the class definition, above) does nothing, he will not be bound by the outcome, favorable or unfavorable.  *See Shushan v. University of Colo., at Boulder*, 132 F.R.D. 263, 264 (D.Colo. 1990).  This "opt in" feature creates what the Fifth Circuit has called a "fundamental irreconcilable difference" between a FLSA collective action and a class action brought pursuant to Rule 23.  *LaChappelle v. Owens-Illinois*, 513 F.2d 286 (5th Cir. 1975).[8]

---

[7] However, the general rule favoring settlement should be taken with a grain of salt in this specific situation, where any settlement that is not judicially-approved is outright prohibited.  *See Gangi*, 328 U.S. 108, 113 (rejecting argument that prohibiting private settlements of even bona fide disputes under FLSA is improper because it is "such a sharp departure from the traditional policy of encouraging the adjustment instead of the litigation of disputes").

[8] "[I]f the action is maintainable as a class action, each person within the description is considered to be a class member and, as such is bound by [the] judgment, whether favorable or unfavorable, unless he has opted out of the suit."  *LaChappelle*, 513 F.2d at 288.  The determination of absent class members' rights that results from resolution of a class action presents significant due process concerns, which drive in large part the requirement of Rule 23 that a court approve any settlement.  Because all those who will be bound by resolution of a collective action have consented to participate in the suit, and the rights of those who have not so "opted-in" will not be determined, the same due process concerns are not present in the consideration of whether to approve settlement of a FLSA collective action.  *See Woods*, 686 F.2d at 579-80.

A district court has significant discretion to fashion the appropriate procedures in collective actions brought under § 216(b).  In *Hoffman-La Roche*, *Inc.*, *v. Sperling*, 493 U.S. 165 (1989), the Supreme Court settled a long-standing circuit split over whether district courts could authorize or facilitate notice of a pending action under § 216(b) to other potential class members on whose behalf the collection action had been brought.  In that context, the Court held that § 216(b) "must grant the [district] court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to the statutory commands of the Federal Rules of Civil Procedure."  *Id.* at 170.[9]  No reason exists to conclude that similar discretion does not lie to fashion the appropriate procedures and standards for approving settlement of actions brought under § 216(b).  *See Shushan*, 132 F.R.D. at 267-68.

Although Rule 23 does not control FLSA collective actions, many courts have adopted many of Rule 23's procedures in such actions by analogy, in an exercise of their discretion to manage the litigation of collective actions under § 216(b).  *See, e.g., Brask,* 2006 WL 2524212 at *2; *Hitchcock v. Orange County, Fla.*, 2006 WL 3614925, *5 (M.D.Fla.  2006).[10]

---

[9] In addition to the authority that it found implied by § 216(b) itself, the Court found further support for a trial court's authority to facilitate initial notice in Rule 83, which allows courts, in any case not provided for by the rules, to "regulate their practice in any manner not inconsistent with" federal or local rules.  *Hoffman-La Roche*, 493 U.S. at 172-73.

[10] Some courts have also resorted to Rule 23 procedures and standards without explaining whether they were doing so by analogy or because the considered the rule controlling.  *See, e.g., Quintanilla v. A & R Demolition Inc.*, 2007 WL 5166849 (S.D. Tex., 5/7/2007).

Several courts have implemented Rule 23 standards for approving settlements in cases involving settlements of both state law class actions and collective actions under FLSA.  *See, e.g., Camp*, 2004 WL 2149079; *Adams v. Inter-Con Security Systems, Inc.*, 2007 WL 3225466 (N.D.Cal. 2007).  The Court has no doubt that because of the relatively robust inquiry necessary under Rule 23, courts may generally be assured that such procedures will allow them to fully exercise their role in approving settlement of a collective action under § 216(b) as well, when both class action and collective action claims are present.  However, as discussed throughout, the focus of the inquiry under each is different, and therefore these cases have limited usefulness in determining the

Under Rule 23, a court should consider the following six factors to determine whether a settlement is "fair, adequate and reasonable ": (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives and absent class members."  *Camp*, 2004 WL 2149079 (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).  Although the Court believes that analogy to Rule 23 is generally appropriate, in accord with the numerous other courts who have considered such factors to determine whether to approve a settlement of a collective action under §216(b), the Court will adopt or vary these factors in their application in light of the special role of the Court in settlement of FLSA claims.

B. Analysis

i.      <u>Bona Fide dispute</u>

As a result of amendments to the FLSA enacted in the Portal-to-Portal Act (enacted in 1947), travel to and from the location of an employee's "principal activity," and activities that are "preliminary or postliminary" to that principal activity are excepted from "work" and "workday."  *See IBP, Inc., v. Alvarez*, 546 U.S. 21, 28 (2005); 29 U.S.C. § 254(a).  In *Steiner v. Mitchell*, 350 U.S. 247 (1956), the Supreme Court held that the "term 'principal activity or activities' [which must be compensated under the statute] ... embraces all activities which are an 'integral and indispensable part of the principal activities.'"  *Id.* at 252-53.  In *IBP, Inc.*, the

---

appropriate standards and procedures necessary where only a FLSA collective action is present.

Court reiterated that under *Steiner*, activities

> such as the donning and doffing of specialized protective gear, that are "performed either before or after the regular work shift, on or off the production line, are compensable under the portal-to-portal provisions of the [FLSA] if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded by [§ 245(a)]."

*Alvarez*, 546 U.S. at 30 (quoting *Steiner*, 350 U.S. at 256).[11]  The Court held that the walking time that occurred post-donning and pre-doffing of required protective gear, the donning and doffing of which the courts below had found to be "integral and indispensable," was not excluded by § 254(a).

It follows that the donning and doffing of the special protective equipment at issue in this case is most likely "integral and indispensable" to the employees' "principal activity," and that the time spent in such activities, along with the time spent after donning and before doffing such equipment walking to and from workstations, is all compensable work time under the FLSA.

However, Sanderson Farms asserts several defenses which it claims could defeat or limit the recovery by plaintiffs in this case.  Although its review of the issues here raises doubts about the strength of several of the defenses suggested by the defendants, as a whole, the Court finds that there are legitimate questions over coverage under FLSA, and even more so over the computation of back wages of individual employees, such that there is a "bona fide dispute" over FLSA coverage that justifies settlement of the plaintiffs' claims.

---

[11] *Alvarez* involved a FLSA collective action by employees of a meat slaughterhouse and processing company, all of whom were required to wear garments, hardhats, hairnets, earplugs, gloves, sleeves, aprons, leggings, and boots, and many of whom were required to wear a variety of additional protective equipment.

Sanderson Farms argues that it could not be said to have been lacking in good faith for the period prior to November 9, 2005, when the Court rendered its decision in *IBP*, and thereafter, the defendants took prompt action to remedy any practices that could be questioned. Under 29 U.S.C. § 260, if the employer shows to the satisfaction of the court that the act or omission giving rise to the action was in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of FLSA, the court may, in its sound discretion, award no liquidated damages.  In *Louise Pressley v. Sanderson Farms, Inc. (Processing Division),* 33 Fed. Appx. 705 (5th Cir. 2002), the Fifth Circuit affirmed the decision of a district court in the Southern District of Texas ("for essentially the reasons stated by the trial court") granting the motion of Sanderson Farms for summary judgment on the grounds that time spent walking and donning, doffing, and cleaning equipment was not compensable work time under the FLSA.  *See Pressley v. Sanderson Farms, Inc. (Processing Division)*, 2001 WL 850017 (S.D.Tex. 4/23/01).  Thus a good possibility exists that Sanderson Farms would show to the satisfaction of the Court that it engaged in its practices in good faith, such that the Court might exercise its discretion not to award liquidated damages for the period prior to the *IBP* decision.

Sanderson Farms also points to a possible *de minimis* defense, in that it argues "the time spent by employees donning and doffing smocks and other clothing was *de minimis*, four to eight minutes."  Rec. Doc. 278 at 21.  While this defense has been recognized by courts, *see, e.g.*, *Lindow v. United States*, 738 F.2d 1057, 1061-62 (9th Cir. 1984) ( "As a general rule employees cannot recover for otherwise compensable time it if is *de minimis*"), including the Supreme

Court, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter at issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.  Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act"), the tenor of the decisions invoking this doctrine appears to contemplate shorter, and less-involved, activities than those at issue here.  Furthermore, application of the *de minimis* defense properly involves a consideration of the difficulty of measuring the time involved.  "In other words, the need to compensate an employee for her work must be weighed against the cost or difficulty of providing compensation... [w]hen providing compensation for a task imposes no additional burden on the employer, there is no justification for denying the employee compensation for that task, regardless how fast the task was performed."  *Spoerle v. Kraft Foods Global, Inc.*, 527 F.Supp.2d 860, 869 (W.D.Wis. 2007). The Court is highly doubtful that four to eight minutes donning and doffing relatively complicated protective gear, each and every work day, could appropriately be considered "*de minimis*"[12] without an additional showing that there is a significant administrative burden on the employer to count such time.[13]  To the plaintiffs, who work for subsistence or near-subsistence wages, even a half-an-hour's wages each week is important, and is not appropriately considered a "trifle."  If the activities and time involved are indeed compensable, and readily calculable, then Sanderson Farms would not be likely to then

---

[12]Assuming an employee works five days per week, 8 minutes each day is 40 minutes, or 2/3 hour per week.  That multiplied by an approximate wage of $ 9/hour by 50 weeks a year equals approximately $ 300 a year, which surely would not be considered *de minimis* by a person earning $9 an hour.

[13] Here, the defendant appears to have been able to count such time to a relatively specific degree, even retroactively, through its expert.

15

succeed in litigation on *de minimis* grounds.[14]

In this Court's view, the primary defense raised by Sanderson Farms, that is, the one that raises the most legitimate questions concerning coverage under the FLSA of the time and activities in this case, and the one that has the most potential to defeat or limit the plaintiffs' recovery, is the argument that 29 U.S.C. § 203(o) applies.  That section excludes from hours worked "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  Sanderson Farms contends that there was a "custom and practice" at its unionized plants of not compensating employees for time spent donning and doffing clothes before and after the work shifts.  Rec. Doc. 278 at 19.  In a June 2002 opinion letter, and in a May 2007 letter reaffirming the 2002 letter, the Administrator of the Wage and Hour Division of the Department of Labor interpreted the term "clothes" in § 203(o) to include the protective safety equipment typically worn by meat packing employees, and to include items worn on the body for covering, protection or sanitation. Op. Ltr. Adm'r, Wage & Hour Div., FLSA2002-2 ( U.S.Dep't of Labor, June 6, 2002).  The May 2007 letter additionally concluded that since activities covered by § 203(o) cannot be considered "principal activities" and do not start the work day, the walking time that occurs after a § 203(o) activity is rendered not compensable unless it is otherwise preceded by a principal activity.  Op.Ltr. Adm'r, Wage & Hour Div., FLSA 2007-10

---

[14] The Court recognizes that this issue has not been briefed by the parties, hence this discussion is not intended in any way as a definitive ruling on the defense.  It is raised only in consideration of whether an actual bona fide dispute exists for the purposes of evaluating the overall agreement.

(U.S. Dep't of Labor, May 14, 2007).  A previous Department of Labor opinion letter from 1997, reaffirmed in January of 2001, had concluded the opposite.  *See Perez v. Mountaire Farms, Inc.*, 2008 WL 2389798, *5 (D.Md., 6/10/08).

Sanderson Farms and the plaintiffs each cite to multiple court decisions, both before and after *IBP, Inc.* was decided, either holding that § 203(o) is applicable to situations similar to that in this case (where, of course, employees are represented by a union) or rejecting such an argument.[15]  This particular issue, though addressed by the Ninth Circuit below in the *Alvarez* case, went unaddressed in the Supreme Court.  *Anderson*, 488 F.3d at 955 n.12.

The determination of the applicability of § 203(o) as invoked by Sanderson Farms presents an involved issue of administrative law, replete with contradictory DOL advisory opinions, statutory interpretation, and a fulsome circuit split.[16]  Any ultimate resolution will only come in this case after what could be years of likely appeals.  The Court thus finds that there is a bona fide dispute over FLSA's coverage of the unionized employees and activities at issue in this case in light of the unresolved applicability of § 203(o).[17]  The Court additionally finds that

---

[15]  *See Anderson v. Cagle's Inc.*, 488 F.3d 945 (11th Cir. 2007) (holding that standard equipment worn by employees at a unionized processing plant fell within the definition of "clothes" in § 203(o) and that, although the DOL opinion conflicted with earlier advisory opinions, it was still entitled to "some deference"); *see also Reich v. Oscar Mayer Foods Corp.*, 1995 WL 1765643 (E.D.Tex. 1995); *but see Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) (reasoning that FLSA exceptions are to be interpreted narrowly and the protective gear does not "plainly and unmistakably" fit within § 203(o), and that specialized protective gear that according to regulations and company policy must be worn by employees is different in kind from typical clothing, and holding that § 203(o) did not cover the protective gear at issue); *Spoerle.*, 527 F.Supp.2d 860; and *Perez*, 2008 WL 2389798.

[16]  The courts holding that § 203(o) does not include the exception for "clothing" protective equipment of the type at issue in *IBP, Inc., v. Alvarez* may have the better argument in the wake of that decision.  However, this issue was not briefed by the parties in this case and the Court makes no determination on the merits of the defense, beyond concluding that a bona fide dispute over FLSA coverage does exist with regard to this defense.

the possibility that Sanderson Farms could show that it engaged in its practices in good faith for a portion of the time at issue, and raise several other legitimate defenses, though perhaps weak, demonstrates that there is a bona fide dispute in this case over FLSA's coverage.

      b.    <u>Fair and Reasonable</u>

After considering the *Reed* factors, 703 F.2d at 172, as modified to apply to this collective action under 29 U.S.C. § 216(b), as discussed below, the Court finds that the settlement is fair and reasonable.

**(1)  The existence of fraud or collusion behind the settlement.**

The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary. *Camp*, 2004 WL 2149079 at *7 (citing 4 NEWBERG ON CLASS ACTIONS § 11.51 (4th ed.)). The Court finds no evidence here of any fraud or collusion. In the more than two years since this action was filed, the parties have engaged in extensive discovery, holding numerous depositions, propounding numerous discovery requests, and producing thousands of pages of documents. The parties engaged in arm's length and good faith settlement negotiations, including a mediation session before Magistrate Judge Roby. The Court finds that the Amended Second Stipulation of Settlement Agreement was the result of arm's length negotiations and that no evidence of fraud or collusion exists.

**(2) The complexity, expense, and likely duration of the litigation.**

**(3) The stage of the proceedings and the amount of discovery completed.**

The Court concludes that these two factors weigh heavily in favor of finding that the settlement is fair and reasonable. This was a complicated case involving many plaintiffs spread

over several states, who work or worked at a number of different poultry plants.  In the many similar cases that have been litigated nationwide since *IBP v. Alvarez* was decided, additional issues have arisen (including those discussed above), and the complexity of legal issues has grown.  Such issues have been resolved in different cases both for and against the workers.  In this case an appeal would be likely by the non-successful party or parties.  Such an appeal would delay any possible payment to the workers until the end of a long process.   The parties cite to the decision in *Rexam, Inc. v. United Steel Workers of America*, 2007 WL 2746595 (D.Minn. 8/17/07), for the proposition that lengthy litigation, and the delay in potential payments it causes, is especially hard on certain classes (in that case Medicare-eligible people in their 60s-70s, here relatively poor poultry farm workers).  A trial of this matter is likely to last several weeks, and involve much expense.  It could be made more complicated if the Court, on motion of the defendants, decided to decertify the class and separate it into subclasses or individual suits. Without this settlement and its formula (a formula the Court finds to be fair and reasonable), extensive individual litigation might be needed to calculate what are on average small back wage claims, and it would be uneconomical for plaintiffs to proceed to trial individually.

Annie Collins filed her suit approximately two years ago.[18]  Extensive discovery was undertaken after Court declined to grant defendants' motion to stay the case pending discussions with the Department of Labor.  Rec. Doc. 92.   The parties agreed to the proposed case management order, approved by the Magistrate judge (Rec. Doc. 107), to prepare for trial, but

---

[18] *Jonell Brown v. Sanderson Farms Inc.*, 06-3835, was filed on July 20, 2006 and thereafter consolidated with the Collins action.  Consolidation Order, Sept. 1, 2006, Rec. Doc. 86.

then the focus of the case moved toward resolution, rather than trial preparations.  Additionally,

plaintiffs' counsel fully prepared a motion for preliminary class certification, which was

ultimately not filed because the parties were negotiating a settlement.   Issues of decertification

and dispositive motions were avoided because of the progress of settlement negotiations.

**(4) The probability of plaintiffs' success on the merits.**

The defendants raise several possible defenses, some discussed above, that they would

raise at trial, including: collateral estoppel; the section 203(o) defense for those working under

collective bargaining agreement; that they have taken remedial actions; that the time involved in

the activities that underlie the plaintiffs' claims is *de minimis*; that the defendants provided paid

break time to its employees; that the statute of limitations would apply to some or a period of the

claims; and that Sanderson Farms could demonstrate that it engaged in its practices in good faith

prior the *IBP, Inc., v. Alvarez* decision of November 9, 2005 such that the Court could in its

discretion not award liquidated damages.

Plaintiffs' counsel believes their case is strong, but indicate that they are experienced and

realistic about the uncertainty inherent in the jury trial and appellate process.  The Court agrees

that plaintiffs' case appears the more meritorious, considering the strength and nature of their

claims in light of the possible defenses.

**(5) The range of possible recovery.**

It appears that if the plaintiffs were to succeed outright on the merits of their claims, the

defendants would be liable to them for compensation for eight minutes per day for much of the

period involved, and for approximately four minutes per day for period from June 1, 2006 to

August 1, 2007 after new smock stations were in place, plus that amount again in liquidated damages. In addition, much of this time would be over and above 40 hours a week for full time workers, such that the additional uncompensated time would need to be compensated at time-and-a-half, plus equivalent amount in liquidated damages. Many individualized factors would weigh in the calculation of damages (hourly wage of the particular employee, whether the time was in excess of forty hours, whether for the particular period at issue, the defendants could demonstrate good faith). The average of 4.8 minutes per day per employee at an average wage of $9.13 an hour appears to approximately account for the average that each employee would have been entitled to in compensation. However, this rate does not account for any period that should have been compensated at time and a half, which could have been a considerable proportion of the time. Nor does it account for any mandatory stipulated damages (which, as discussed above, are not punitive, but rather meant to reflect Congress' estimation of the compensatory damages necessary to place workers in the position they would have been if they had been compensated in a timely manner). Therefore, although this estimation is crude, it appears that the payments under the settlement reflect an average of somewhat less than half those the plaintiffs would be entitled to if they succeeded totally in litigation. However, those "highest hopes" would also have to be offset by the further significant delay that would result from extensive and expensive litigation. Furthermore, it is possible that the plaintiffs would recover nothing. The Supreme Court in *O'Neil* recognized the significant damages that can occur as a result in delay of payment to persons working for subsistence wages, 324 U.S. at 707-08, and this Court is aware of the additional damages that further delay could cause the plaintiffs

in this case.

**(6) The opinions of class counsel, class representatives and absent class members**

The parties join in requesting approval of the settlement, which was arrived at after extensive negotiation by class counsel.  The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement.  *Cotton*, 559 F.2d at 1330.  However, the Court must keep in mind that a potential conflict of interest always exists between an attorney and a class.  *In re Employee Benefit Plans Securities Litigation*, 1993 WL 330595, *5 (D.Minn. 1993) (citing *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2nd Cir. 1974).  The Court finds no evidence that plaintiffs' counsel have not worked in good faith to secure a good settlement, which, as they note "provides prompt and substantial relief to all plaintiffs" (Rec. Doc. 278 at 24), taking into account the uncertainty and risks involved in litigation of their claims in light of the strength of the claims and possible defenses.

The consideration of the "opinions of absent class members" is one that perhaps reflects the starkest difference between class actions under Rule 23 and collective actions pursuant to § 216(b), that is, the requirement that class members affirmatively give their consent to join in the latter.  All the present plaintiffs to this collective action have agreed to join in this lawsuit, and be represented by the named plaintiffs' counsel.[19]  Further, counsel has averred in an affidavit that all those who have consented to participate have received the description of the settlement,

---

[19] This Court previously approved notice to potential class members of the lawsuit and proposed settlement in June, 2007 (Rec. Doc. 189) and a second notice (pursuant to the amended settlement agreement) in February, 2008 (Rec. Doc. 268), pursuant to *Hoffman LaRoche*, 493 US. 165.

whether they joined the lawsuit prior to the settlement agreement or after (those who joined after received notice of the settlement's terms approved by the Court). Rec. Doc. 278-2, Affidavit of William S. Hommel, Jr., at 2; Rec. Doc. 278-21, Notice of Settlement. Thus all participating plaintiffs have expressed an opinion regarding the settlement, to a degree that satisfies the Court, by virtue of remaining in the lawsuit. Because no real "absent" class members exist whose rights will be determined in this settlement who have not consented to participate, the Court need not consider such interests as it would in a settlement of a class action under Rule 23.

Finally, the parties highlight that the defendants have implemented significant changes in their business practice, in that they have relocated and added more smock stations at their plants that will cut down considerably the traveling time to and from work stations, and now pay their employees for the time spent donning and doffing any gear required by Sanderson Farms which they do not permit to be taken home and for donning and doffing during lunch. To the extent these practices were altered as a result of the plaintiffs' claims, they represent a significant and affirmative result of this collective action, and such changes factor significantly in this Court's approval of the settlement.

In conclusion, the balance of the factors weighs in favor of approval of this settlement, and the Court finds that it is a fair and reasonable settlement of a bona fide dispute.

### III.  Reasonable Attorney's Fees

As part of its fairness determination, the Court must also determine that the proposed attorney's fees are reasonable. *Camp*, 2004 WL 2149079 at *18 (citing *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). In this case, the Court does not have to

apportion the fees among plaintiffs' counsel, as they have already agreed to divide per their private fee-sharing agreement, a procedure approved by Fifth Circuit. *Longden v. Sunderman*, 979 F.3d 1095, 1101 (5th Cir. 1992).

The Fifth Circuit employs the lodestar method for determining the reasonableness of attorney's fees in FLSA collective actions, *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999), which is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. *Id.* The court may then decrease or enhance the lodestar based on the relative weights of twelve factors (as amended by subsequent law) set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), but may not adjust the lodestar award if the creation of such award already took that factor into account, which would result in impermissible double-counting. *Id.* The Court finds that Plaintiffs' counsel have provided sufficient proof of their lodestar hours, Rec. Doc. 278, Ex. A-3, A-7 (billing records and affidavit); in addition, defendants do not oppose the calculations. The Court finds the hourly rates charged by plaintiffs' counsel and the amount of hours worked to be reasonable based on the prevailing market rates.[20] Additional factors from *Johnson*, including the complexity of the procedural and factual issues, the inability of plaintiffs' counsel to handle other matters due the total hours consumed by this case, and the reasonable degree of success in the terms of the settlement, justify the lodestar of $750,000. In addition, the $770,000 total award only apportions $20,000 for costs, even though plaintiffs' counsel has incurred costs

---

[20] The rates charged, which includes $350 an hour for partners and $95 an hour for paralegals, and hours worked are set forth in Rec. Doc. 278 at 31; *see also* Rec. Doc. 278, Ex. A-3. The hourly rates and the number of hours worked results in an initial lodestar amount of $604,637.75. *Id.*

of $95,495.74.

Courts have endorsed the practice of using the other method of determining reasonableness of fees in class actions, percentage of recovery, to double check the fee. *See In re Linerboard Antitrust Litigation*, 2004 WL 1221350, *3 (E.D.Pa. 6/2/2004). Employing the percentage of recovery method as a cross-check, the $750,000 award amounts to 25% of the original settlement amount of $3,000,000, and about 24% of the amended amount of $3,120,000. The percentage of this award is lower than the caselaw would support. *See, e.g., In re Harrah's Entertainment, Inc.*, 1998 WL 832574, *4 (E.D.La. 11/25/1998) (Clement, J.) (noting that it is not unusual for district courts in the Fifth Circuit to award percentages of approximately one third); *In re Prudential-Bache Energy Income P'ship Secs. Litig*, 1994 WL 150742, *1-2, 4 (E.D.La. 4/13/1994) (Livaudais, J.) (noting that awards in common fund cases have historically been computed typically in the 25% to 33% range and was intended to approximate what private counsel ordinarily would charge in a contingent fee contract, and listing awards in cases from this district). The Court finds the $750,000 attorney's fees award and $20,000 for costs as reached in the settlement in this case to be reasonable.

New Orleans, Louisiana this 9th day of July, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE